UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES,<br><br>                     -v-<br><br>CARLOS LOPEZ,<br><br>                                    Defendant. | S5 11 Cr. 1032, 21 Civ. 2698 (PAE)<br><br>OPINION & ORDER |

PAUL A. ENGELMAYER, District Judge:

This decision resolves a *pro se* motion by defendant Carlos Lopez, pursuant to 28 U.S.C. § 2255, for relief based on ineffective assistance of counsel from the 14 counts of conviction entered against him following a 12-week jury trial in fall 2014.

**I.     Background**

   **A.  Indictment, Trial, Sentencing, and Appeal**

As brief background,[1] Indictment S5 11 Cr. 1028 (PAE), along with associated superseding indictments, charged approximately 76 defendants with racketeering, racketeering conspiracy, murder in aid of racketeering, narcotics conspiracy, and related offenses in connection with their membership in, or affiliation with, the Bronx Trinitarios Gang ("BTG"), a northwest Bronx gang that engaged in drug trafficking and numerous murders, attempted murders, stabbings, and other acts of violence.

More than 70 defendants pled guilty.  The remaining five were tried in two lengthy jury trials.  The first was a two-defendant, eight-week trial that begin in March 2014.  It centered on a

---

[1] A fuller summary is contained in the Government's brief in opposition to Lopez's motion.  *See* Dkt. 2643 in 11 Cr. 1032 (PAE) ("Opp.") at 2–8.  Unless otherwise indicated, ensuing docket citations in this decision are to Lopez's underlying criminal case, 11 Cr. 1032 (PAE).

1

single murder committed by BTG members in Yonkers in 2005. The second was a three-defendant, 12-week trial of Lopez and two others—Felix Lopez-Cabrera, who is Lopez's half-brother, and Luis Beltran—that began in September 2014.

The trial centered on five murders committed by BTG members. Lopez was alleged to have participated in three. These were: (1) and (2), the May 22, 2010 shotgun double-murder of Raffy Taveras and Irving Cruz, members of a rival gang, whom Lopez and Lopez-Cabrera chased down an entire Bronx street while Lopez-Cabrera shot them each fatally in the back; and (3) the November 20, 2010 murder of Freddy Polanco, who had allegedly disrespected the BTG sect ("the Bad Boys") with which Lopez affiliated, and whom Lopez and a fellow BTG member, seeking revenge, stalked and cornered in the lobby of a Bronx building, with Lopez's confederate firing the fatal shots.

The Government's proof included 54 witnesses, including 11 cooperating witnesses from BTG, who testified to the murders, acts of violence, and other crimes the defendants had committed. It also included 601 exhibits, including security-camera footage of the Taveras-Cruz double-murder that captured images of Lopez and Lopez-Cabrera chasing the victims and fleeing the scene; crime-scene photographs, ballistics, and other physical evidence; numerous Title III wiretap interceptions; controlled substances, firearms, and machetes seized from BTG members, including machetes recovered from the homes of Lopez and Lopez-Cabrera; and internal gang documents setting forth BTG's norms and rules.

On December 3, 2014, the jury convicted Lopez on all charges against him. These were participating in a racketeering organization, in violation of 18 U.S.C. § 1962(c); conspiracy to do the same, in violation of 18 U.S.C. § 1962(d); three counts of murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(1); two counts of conspiracy to commit the same, in violation of

18 U.S.C. § 1959(a)(5); assault and attempted murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(3) and (a)(5); conspiracy to distribute and possess with intent to distribute narcotics, in violation of 21 U.S.C. § 846; three counts of discharging a firearm in furtherance of a crime of violence, causing death, in violation of 18 U.S.C. § 924(j)(1); discharging a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(C)(1)(A)(iii); and discharging a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(iii) and (c)(1)(C)(i). *See* Dkt. 1417 (jury's verdict form). Save for the substantive racketeering charge against Beltran, Lopez-Cabrera and Beltran were convicted of all charges against them, which included four counts of murder in aid of racketeering for Lopez-Cabrera and one for Beltran. *Id*.

On May 22, 2015, the three defendants jointly moved to challenge as unconstitutional the mandatory life sentences required by the murder in aid of racketeering statute. Noting that each had been between ages 18 and 22 at the time of the murders at issue, each argued that mandating a life term to a defendant of such an age violated the Eighth Amendment. Dkt. 1698 (sentencing submission by Lopez). In a written decision issued June 22, 2015, the Court denied that motion, based on binding case authority finding mandatory life sentences unconstitutional for juveniles, defined as persons under age 18 at the time of their offenses. *See generally* Dkt. 1726 (citing, *inter alia*, *Miller v. Alabama*, 132 S. Ct. 2455 (2012); and *Roper v. Simmons*, 543 U.S. 574 (2005)).

On July 7, 2015, the Court sentenced Lopez to three mandatory life sentences, to be followed by 420 months' imprisonment, and imposed a five-year period of supervised release. *See* Dkt. 1739 (judgment); Dkt. 1754 (transcript of Lopez sentencing).

On July 10, 2015, Lopez filed a timely notice of appeal. Dkt. 1741. Lopez's appeal raised issues relating to his sentence: (1) whether a mandatory life sentence for him on the murder in aid of racketeering accounts violated the Eighth Amendment, in light of Lopez's age at the time of the murders and the fact that he had been an accomplice (not the shooter) in the Taveras, Cruz, and Polanco murders; and (2) if so, whether, in imposing the life sentences, the Court had erred in not considering factors relating to Lopez's history and personal characteristics. *See United States v. Sierra*, 933 F.3d 95, 97–99 (2d Cir. 2019). On August 1, 2019, the Second Circuit denied Lopez's appeal and affirmed this Court's judgment. *Id.* at 99.

Thereafter, Lopez joined a petition for a writ of certiorari submitted by Beltran. On March 23, 2020, the Supreme Court denied the petition for a writ of certiorari. *Beltran v. United States*, 140 S. Ct. 2540 (2020) (mem.).

### B. Lopez's § 2255 Motion

Lopez's instant *pro se* motion pursuant to 28 U.S.C. § 2255, dated March 18, 2021, was filed March 26, 2021, upon its receipt. Dkt. 2607 ("Motion"). It argues that, in five respects, his counsel (trial and appellate) were ineffective.[2] On October 3, 2021, the Government filed its opposition. Opp. Despite extending Lopez's deadline to reply several times, including to February 15, 2022, *see* Dkt. 2655; *see also* Dkt. 2648, Lopez did not file a reply, although he did, in November 2022, submit a letter seeking copies of certain case documents. *See* Dkt. 2671

---

[2] In an order dated April 7, 2021, the Court ordered Lopez to file a declaration showing cause why his § 2255 motion should not be denied as time-barred, inasmuch as it appeared that Lopez had not filed a petition for certiorari or joined Beltran's petition, Dkt. 2609. On June 14, 2021, having not received a response, the Court denied Lopez's § 2255 motion as time barred. *See* Dkt. 4 (21 Civ. 2698 (PAE)). On June 23, 2021, Lopez filed a declaration in response. Dkt. 2622. On July 7, 2021, as directed by the Court, Dkt. 2623, the Government filed a letter stating that Lopez had indeed joined Beltran's petition, Dkt. 2624. Accordingly, on July 12, 2021, the Court vacated its denial of the § 2255 motion, reopened the motion, and set a deadline for the Government's opposition. Dkt. 2628.

(letter of November 18, 2022, docketed December 1, 2022); Dkt. 2673 (order of December 6, 2022, granting this request).

## II. Discussion

Lopez's *pro se* § 2255 motion[3] argues that his trial counsel rendered ineffective assistance, based on counsel's not having objected at trial to two of the Court's legal instructions to the jury, not having objected at sentencing to an aspect of the presentence report, and not having moved for a judgment of acquittal on a firearms count. Lopez also faults his appellate counsel, for not challenging several of these ostensible errors on appeal, and for failing to challenge the firearms counts under *United States v. Davis*, 139 S. Ct. 2319 (2019).

Section 2255 enables a prisoner who was sentenced by a federal court to petition that court to vacate, set aside, or correct the sentence because "the sentence was imposed in violation of the Constitution or laws of the United States . . . or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Relief under § 2255 is generally available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)). "Because collateral challenges are in tension with society's strong interest in the finality of

---

[3] There is no constitutional right to counsel in a proceeding brought under § 2255. *See, e.g.*, *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). The Criminal Justice Act ("CJA") provides that a court may appoint counsel to an indigent person in a § 2255 proceeding when "the interests of justice so require." 18 U.S.C. § 3006A(a)(2)(B). In deciding whether to exercise its discretion to appoint counsel under the CJA, courts in the Second Circuit consider the same factors as those applicable to requests for *pro bono* counsel made by civil litigants. *See, e.g.*, *Bennett v. United States*, No. 03 Civ. 1852 (SAS), 2004 WL 2711064, at *7 (S.D.N.Y. Nov. 23, 2004). Those factors include the likelihood of success on the merits, the complexity of the legal issues, and the movant's ability to investigate and present the case. *See, e.g.*, *Cooper v. A. Sargenti Co.*, 877 F.2d 170, 172 (2d Cir. 1989); *Hodge v. Police Officers*, 802 F.2d 58, 61–62 (2d Cir. 1986).

criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack." *Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010) (citation omitted).

A claim of ineffective assistance of counsel, however, is a permissible basis for bringing a § 2255 petition. The Sixth Amendment affords a defendant in criminal proceedings the right "to effective assistance from his attorney at all critical stages in the proceedings." *Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013). A defendant claiming ineffective assistance must establish that (1) his "counsel's performance was deficient" and (2) "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

As for *Strickland*'s first prong, a court "must judge [counsel's] conduct on the basis of the facts of the particular case, 'viewed as of the time of counsel's conduct,' and may not use hindsight to second-guess his strategy choices." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (quoting *Strickland*, 466 U.S. at 690). A court is to start from the "strong presumption" that counsel's conduct fell "within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. That is because there are many ways to provide effective assistance, and "[e]ven the best criminal defense attorneys would not defend a particular client in the same way." *Id.* at 689–90; *see id.* at 689 ("Judicial scrutiny of counsel's performance must be highly deferential."); *see Rivas v. Fischer*, 780 F.3d 529, 547 (2d Cir. 2015).

As for *Strickland*'s second prong, proving prejudice requires a defendant to show that but for counsel's errors, there was a reasonable probability that the outcome would have been different—a "probability sufficient to undermine confidence in the outcome." *Bierenbaum v. Graham*, 607 F.3d 36, 51 (2d Cir. 2010) (quoting *Strickland*, 466 U.S. at 694). This requires the

6

court to examine "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993) (citation omitted).

"In ruling on a motion under § 2255, the district court is required to hold a hearing '[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" *Gonzalez*, 722 F.3d at 130 (quoting 28 U.S.C. § 2255). Thus, for a § 2255 petitioner to obtain a hearing, "the motion must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle him to relief." *Id.* at 131 (citing *Machibroda v. United States*, 368 U.S. 487, 494 (1962)).

Measured against these standards, Lopez's ineffective assistance claim is quickly put aside. His challenges to specific decisions by his trial and appellate counsel are each baseless, for the reasons ably recited in the Government's opposition brief and as addressed below.

Most fundamentally, when viewed in totality, the performance of his estimable and dedicated trial counsel (Susan Kellman, Esq., assisted by Ezra Spilke, Esq.), who also represented Lopez on appeal, was light-years from being ineffective. Quite the contrary, as the lengthy trial transcript reflects throughout, counsel's performance was formidable. Counsel put the Government's case to its proof at every turn and adeptly and energetically engaged the jury during arguments and examinations. Simply put, the across-the-board guilty verdict as to Lopez reflected not any lapse by counsel, but the overwhelming proof of his guilt.

For that separate reason, even if trial or appellate counsel's overall performance were open to valid critique, which they are not, there was no conceivable prejudice to Lopez. The evidence of Lopez's guilt was vast, compelling, and variegated, including in connection with the three retaliatory murders in which Lopez participated. And Lopez, revealingly, does not take

issue with the performance of his counsel in connection with the receipt of, or argumentation about, the evidence.

As to Lopez's distinct critiques:

***Failing to object to lack of notice as to an aiding and abetting charge***:  Lopez first claims that he received late notice that the Government would pursue a theory of aiding and abetting liability on various substantive counts and that his trial and appellate counsel failed to challenge the inadequate notice.  That critique is demonstrably off-base.

The superseding indictment on which the charges at trial rested, S5 11 Cr. 1032 (PAE), was returned February 6, 2013.  *See* Dkt. 539 ("Superseding Indictment").  In connection with each count that Lopez identifies, it explicitly charged Lopez with aiding and abetting.  It did so by reciting both the substantive statutes at issue and, alongside each, 18 U.S.C. § 2, which provides, as relevant here, that any person who "aids" or "abets" a principal in committing a substantive offense against the United States is punishable as a principal.  Central here, these counts included the three charging Lopez with murder in aid of racketeering: one as to Taveras, one as to Cruz, and one as to Polanco.  *See id*. ¶¶ 105, 107, 112.  The Superseding Indictment's explicit invocation of the aiding and abetting statute in connection with these charges was legally adequate notice.  No more notice was required.  *See United States v. Mucciante*, 21 F.3d 1228, 1234 (2d Cir. 1994) ("[T]he inclusion of an aiding and abetting charge to the jury will rarely, if ever, constructively amend an indictment because an aiding and abetting charge is arguably implicit in every indictment."); *see also United States v. Weintraub*, 27 F. App'x 54, 56 (2d Cir. 2001); *United States v. Hernandez*, 980 F.2d 868, 871 (2d Cir. 1992); *Alston v. Donnelly*, 461 F. Supp. 2d 112, 125 (W.D.N.Y. 2006).

In addition, the record makes clear that all counsel—and the Court—were aware at all times that the Government was pursuing an aiding and abetting theory. For one, consistent with the Superseding Indictment, the Government, in its requests to charge, expressly requested that the jury be instructed on aiding and abetting liability, *see* Dkt. 1258 at 23–25, and pointedly differentiated in the formulation of this charge between non-firearms counts such as those charging murder in aid of racketeering, and the firearms counts, *see id.* at 70–72. The Court, for its part, advised counsel even before the conclusion of the Government's case that it had included an aiding and abetting instruction in its draft jury charges. *See* Trial Transcript ("Tr.") 5255. And Lopez's counsel, in a letter before the close of the Government's case that objected to the Government's proposed *Pinkerton* charge as confusing, acknowledged that the Court had given an aiding and abetting charge in the preceding BTG trial and that there was a factual basis for an aiding and abetting charge as to each of the acts in which the Government sought a *Pinkerton* charge in Lopez's case, including each of the charged murders. *See* Dkt. 1388 at 2. Later, at the charge conference, counsel and the Court explicitly addressed the language of an aiding and abetting charge. *See* Tr. 5639–43.

Lopez's first claim of deficient performance, that trial and appellate counsel failed to challenge the lack of notice of an aiding and abetting instruction, is thus factually errant. Counsel cannot be faulted for not advancing a patently baseless argument.[4]

---

[4] Also factually wrong is Lopez's claim that trial counsel failed to object to the sufficiency of the evidence supporting aiding and abetting liability. In fact, trial counsel moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29 as to all counts and theories of liability. *See* Tr. 5470–71. Lopez relatedly faults appellate counsel for not challenging the sufficiency of the evidence as to aiding and abetting the substantive offenses with which Lopez was charged. For the reasons stated by the Government, any such claim would have been baseless, given the ample evidence supporting aiding and abetting liability, including as to the three murders. It follows that appellate counsel acted well within its professional discretion in not advancing a baseless argument. *See* Opp. at 16–18; *Aparicio v. Artuz*, 269 F.3d 78, 91 (2d Cir. 2001). To the

9

***Failure to object to the* Pinkerton *charge*:**  Lopez next faults his trial counsel for failing to object to the Court's *Pinkerton* charge, and his appellate counsel for failing to challenge that instruction on appeal. That critique also misses the mark.

To begin, far from failing to object, trial counsel energetically and repeatedly opposed the *Pinkerton* charge. Counsel opposed such a charge in a lengthy letter submitted prior to the close of the Government's case, Dkt. 1388. The Court then proposed a draft of the *Pinkerton* charge to the parties, Tr. 5460–62, and heard extended argument from counsel for all defendants, including Lopez's, on whether to give such a charge; which acts and counts the charge, if given, should relate to; and how the charge should be formulated. *Id.* at 5528–53; *see id.* at 5549–52 (Lopez counsel). The Court ultimately gave a *Pinkerton* charge as to a subset of the matters on which it was sought. As given, the charge was limited to three racketeering acts (charging certain of the murders in aid of racketeering) and the substantive counts that they tracked, as opposed to the six racketeering acts as to which the Government had sought such a charge. This thus reflected a partially successful defense objection. *Id.* at 6498–99. Even then, Lopez's counsel continued to press the point, objecting to the *Pinkerton* charge anew immediately before closing arguments. *Id.* at 5678–80; *see also id.* at 5682 (Court, overruling objection, while commending counsel for "the vigor of the argument"). Lopez therefore does not have a valid beef with his trial counsel for failing to spot or pursue this issue. Far from falling below an objective standard of reasonableness, counsel's advocacy on this point was persistent and first-rate.

---

extent that Lopez, in the course of this critique, suggests that the evidence of aiding and abetting was insufficient, any challenge to evidentiary sufficiency is barred on the instant § 2255 motion, because it could have been brought on direct appeal. *See* Opp. at 15–16; *Hickman v. Nash*, 8 F. App'x 59, 60 (2d Cir. 2001).

As to Lopez's challenge to appellate counsel's performance, Lopez is correct that counsel did not challenge the *Pinkerton* instruction on appeal. But appellate counsel did not have an obligation to raise any conceivable question on appeal. *See Weingarten v. United States*, 865 F.3d 48, 53 (2d Cir. 2017). And the Court's decision to give a *Pinkerton* instruction here was well within its discretion under the case law.

As the Court found and as Lopez does not dispute, the evidence as to the murders at issue supplied a proper factual predicate for such an instruction. Multiple BTG members were present for each of the murders at issue. And, although not alleged to have been the fatal shooter, Lopez was present at, and evidence supported that he had assisted in, the murders of Taveras, Cruz, and Polanco, the first two by chasing the victims down a full city block while fellow chaser Lopez-Cabrera shot at them, and the latter by joining the group of BTG members tasked with retaliating against Polanco, and serving as a lookout and security in a building lobby while another member of the Bad Boys executed Polanco.

Lopez instead contends that the *Pinkerton* instruction was misleading and improperly shifted the burden of proof to the defense. In fact, the instruction as formulated tracked Second Circuit precedent. It instructed the jury that the Government had the burden of proof beyond a reasonable doubt on all points.[5] And it instructed the jury that, to find a defendant guilty of murder in aid of racketeering based on a *Pinkerton* theory of liability, the jury first had to find, beyond a reasonable doubt, that: (1) the murder in aid of racketeering had been committed; (2) the persons who actually committed the murder were members of the conspiracy that the jury had found to exist; (3) the crime was committed pursuant to a common plan among the

---

[5] Lopez's trial counsel in fact acknowledged the Court's proposed *Pinkerton* instruction "doesn't erode the [Government's] burden of proof." Tr. 5680.

11

conspirators; (4) the defendant was a member of that conspiracy at the time of the murder; and (5) the defendant could have foreseen that the murder might be committed by his co-conspirators.  Tr. 6500–01.  The Court further instructed the jury that if it so found, it "may, but [is] not required to, find the defendant you are considering, guilty of the substantive crime charged against him, even if he did not personally participate in the substantive crime charged against him, even if he did not personally participate in the acts constituting the crime or did not have actual knowledge of it."  *Id*.  That instruction tracks those upheld by the Second Circuit both before and after the trial.  *See, e.g.*, *United States v. McCoy*, 995 F.3d 32, 64 (2d Cir. 2021) (finding "no *Pinkerton* error" in substantively identical instruction), *cert. granted, judgment vacated sub nom. on other grounds Nix v. United States*, 142 S. Ct. 2860 (2022)*, and cert. granted, judgment vacated on other grounds*, 142 S. Ct. 2863 (2022); *see also United States v. Lloyd*, 631 F. App'x 45, 50 (2d Cir. 2015); *United States v. Masotto*, 73 F.3d 1233, 1239–40 (2d Cir. 1996).

      Lopez's ineffective assistance claims based on the *Pinkerton* charge thus lack merit.

      ***Failure of appellate counsel to challenge his firearms convictions***:  Lopez next faults his appellate counsel for failing to challenge his five firearms convictions as invalid under *Davis*, 139 S. Ct. 2319.  Formulated as an ineffective assistance claim, that argument fails, because Lopez's appeal was filed in 2015 and argued in May 2019, years before *Davis* was decided.  The Court, accordingly—reading Lopez's motion generously in light of his *pro se* status—construes Lopez to challenge those convictions themselves under *Davis*.  Such a claim, however, is meritless.

      *Davis* addressed firearms convictions under 18 U.S.C. § 924(c)(1)(A), which authorizes heightened criminal penalties for using, carrying, or possessing a firearm in connection with any

12

federal "crime of violence or drug trafficking crime." 18 U.S.C. § 924(c)(1)(A). The statute defines "crime of violence" alternatively under its "elements clause," § 924(c)(3)(A), and its residual clause, § 924(c)(3)(B). *Davis* invalidated the residual clause as unconstitutionally vague, leaving standing the elements clause. According to § 924(c)(3), a crime of violence is "an offense that is a felony" which "has as an element the use, attempted use, or threatened use of physical force against the person or property of another," *id.* § 924(c)(3)(A); the latter applies to a felony "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense," *id.* § 924(c)(3)(B).

*Davis*, however, does not void any of the firearms convictions. To begin, one of them, Count 51,[6] did not have as a predicate a "crime of violence." It instead charged the discharge of a firearm in connection with a "drug trafficking crime." *See* Superseding Indictment ¶ 172. *Davis* does not affect such a charge.

Of the other four, three (Counts 37, 38, and 39) charged the discharge of a firearm in connection with the substantive offense of murder in aid of racketeering, specifically, the murders of Taveras, Cruz, and Polanco. *See id*. ¶¶ 158–60. And the fourth (Count 40) charged the discharge of a firearm in connection with an assault and attempted murder in aid of racketeering. *See id*. ¶ 161. But a challenge to those convictions is squarely foreclosed by the direct appeal in this case. There, co-defendant and co-appellant Lopez-Cabrera challenged five of his firearms convictions on the grounds that the underlying offenses were not "crimes of violence." These included Counts 37, 38, and 40. The Second Circuit—in a decision handed down two months after *Davis*, and which appears to have been held pending the decision in

---

[6] The Court here uses the numbering in the Superseding Indictment. At trial, with counsels' consent, the Court renumbered the counts in the Superseding Indictment to excise counts solely involving defendants not on trial.

*Davis*—upheld those convictions on the ground that those offenses were not "crimes of violence." *See United States v. Sierra*, 782 F. App'x 16, 20 (2d Cir. 2019).[7] It held that murder in aid of racketeering, and assault and attempted murder in aid of racketeering, each qualify categorically as "crimes of violence" under the elements clause. *See id.* at 20.[8] That reasoning equally applies to Count 39, the one murder in aid of racketeering in which Lopez but not Lopez-Cabrera participated.

Lopez's § 2255 challenge based on the firearms counts, however construed, thus also fails.

***Failure to move for a judgment of acquittal on Count 51***:  Lopez next faults his counsel for failing to move for a judgment of acquittal on Count 51, which alleged the discharge of a firearm in connection with a drug trafficking offense—the BTG-based narcotics conspiracy of which Lopez was convicted. That critique is factually errant. Contrary to Lopez's premise, trial counsel did move at the close of the Government's case in chief under Federal Rule of Criminal

---

[7] The Circuit's decision affirming Lopez, Lopez-Cabrera, and Beltran's convictions cited *Davis* and summarized its holding. *See Sierra*, 782 F. App'x at 20 n.1.

[8] Since *Davis*, numerous courts in this District have held murder in aid of racketeering to be a valid predicate for charges under § 924(c), *see, e.g.*, *United States v. Erbo*, No. 97 Cr. 1105 (LAP), 2020 WL 6802946, at *3 (S.D.N.Y. Nov. 19, 2020) ("[The defendant's] contention that murder in the aid of racketeering does not constitute a 'crime of violence' under Section 924(c)'s clause must fail."); *Lagos v. United States*, No. 10 Cr. 392-9 (CS), 2019 WL 6702578, at *1 (S.D.N.Y. Feb. 28, 2019) ("[A] § 924(c) conviction based on murder in aid of racketeering is valid under the elements clause regardless of the validity of the residual clause."). At least one has held the same as to attempted murder and assault in aid of racketeering, *see, e.g., Abrue v. United States*, No. 16 Cr. 5052 (WHP), 2020 WL 4570338, at *9 (S.D.N.Y. Aug. 7, 2020) (holding attempted murder in aid of racketeering is "categorically a 'crime of violence' under § 924's force clause"). The Court is unaware of any contrary authority.

Procedure 29(a) for a judgment of acquittal. Tr. 5470–71. The Court denied that motion. *Id*. at 5472–73.[9]

***Failure to object to the presentence report***: Finally, Lopez claims that his counsel erred in not objecting to the presentence report, insofar as it stated that he had been convicted of first-degree murder and calculated his Sentencing Guidelines range accordingly. Under the Guidelines, first-degree murder is defined as a "premeditated killing"; all murders outside this definition are second-degree murders. *See* U.S.S.G. § 2A1.1(a) & Application Note 1 (citing 18 U.S.C. § 1111(a)).

As a basis for claiming ineffective assistance of counsel, this claim fails, for three reasons. First, as chronicled in the Government's opposition, the evidence overwhelmingly established the premeditated nature of the murders of Taveras, Cruz, and Polanco. Each was the product of a mission deliberately undertaken by multiple BTG members, including Lopez, to retaliate for slights perceived by the gang. *See* Opp. at 27–28. Second, by its terms, § 2A1.1(a) independently categorically applies where the offense level is calculated based on the murder in aid of racketeering offense. *See* U.S.S.G. § 2A1.1(a), Application Note 1. Such was the case with respect to all three murders in which Lopez participated. Third, in light of the statutorily mandated life sentence for murder in aid of racketeering, any error in calculating Lopez's Guidelines' range was of no consequence at his sentencing.

## CONCLUSION

---

[9] To the extent Lopez's motion can be read also to challenge the sufficiency of the evidence on that charge, that argument—like Lopez's challenge to the sufficiency of the evidence of his aiding and abetting the three murders in aid of racketeering—fails for two reasons. First, the evidence in support of that conviction, as chronicled by the Government, was sufficient. *See* Opp. at 29. Second, any challenge to evidentiary sufficiency is barred on this motion, because it could have been brought on direct appeal. *See supra* note 4.

For the reasons above, the Court denies Lopez's motion for relief pursuant to 28 U.S.C. § 2255 as meritless.[10] The Court declines to issue a certificate of appealability. Lopez has not made a substantial showing of a denial of a federal right, and appellate review is therefore not warranted. *See* 28 U.S.C. § 2253(c)(2); *Love v. McCray*, 413 F.3d 192, 195 (2d Cir. 2005). The Court also certifies that any appeal from this order would not be taken in good faith; therefore, *in forma pauperis* status is denied for purposes of an appeal. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

The Clerk of Court is respectfully directed to terminate the case 21 Civ. 2698 and to mail a copy of this order to Lopez.

SO ORDERED.

                                              *Paul A. Engelmayer*
                                              Paul A. Engelmayer
                                              United States District Judge

Dated: January 5, 2023
       New York, New York

---

[10] Lopez requests an evidentiary hearing for his motion. "In ruling on a motion under § 2255, the district court is required to hold a hearing '[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" *Gonzalez*, 722 F.3d at 130 (quoting 28 U.S.C. § 2255). But "the filing of a motion pursuant to § 2255 does not automatically entitle the movant to a hearing; that section does not imply that there must be a hearing where the allegations are 'vague, conclusory, or palpably incredible.'" *Id.* (quoting *Machibroda*, 368 U.S. at 495). "To warrant a hearing, the motion must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle him to relief." *Id.* at 131. "In determining whether the assertions in a § 2255 motion warrant discovery or a hearing, the court must also take into account admissions made by the defendant at his plea hearing." *Id.* "[S]ubsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Here, all of Lopez's claims are either conclusory, belied by the record, and/or insufficient (even if proven true) as a matter of law. As a result, no evidentiary hearing is warranted.